**U.S. Departm ﹐ of Justice**



Office of the
Assistant Attorney General

*Washington, D.C. 20530*

April 4, 1990

MEMORANDUM FOR C. BOYDEN GRAY
Counsel to the President

Re:  Transportation for Spouses of Cabinet Members

The President believes that Cabinet spouses provide direct and important services to the federal government when they participate in representational activities with their Cabinet member spouses and, you have informed us, he believes spousal travel to and from such activities should be paid for by the Government.[1] The President is prepared to authorize issuance of a directive describing the circumstances in which he believes spousal participation (and therefore their travel) would further the missions of the respective Executive departments. We understand that the President is considering issuing a memorandum that would include the following determination:

> [A]lthough spouses of Cabinet members are not considered employees of the Federal Government by virtue of their husband or wife's position in the Cabinet, certain activities on their part have an official Government purpose and may appropriately be supported by the Government, including --
>
> °    attending receptions and similar functions in a representative role on behalf of the United States Government, whether or not accompanied by the Cabinet member;
>
> °    speaking or other appearances as an official representative of the U.S. Government;
>
> °    attendance, with other Cabinet spouses and/or the First Lady, at meetings or events concerned with U.S. Government functions; and

---

[1] Memorandum for William P. Barr, Assistant Attorney General, Office of Legal Counsel from C. Boyden Gray, Counsel to the President, January 8, 1990. This memorandum includes a Draft Guidance Memorandum (Draft Guidance Memorandum) for proposed use by agency heads.

      °      other activities approved by and directly
          supporting the mission of the Cabinet
          member's agency.

Draft Guidance Memorandum, at 1.  If the President authorizes
issuance of this directive, the concerned agencies are prepared
to promulgate any needed implementing regulations.

     You have asked for our advice on whether spousal travel,
either by air or ground transportation, in the circumstances
recited by the proposed directive may be paid for by the
Government.  We conclude for the reasons set forth below that
Cabinet spouses who participate in these activities may travel at
government expense.

I.  Automobile Travel by Spouses

     There are two statutes applicable to spousal travel by
automobile.[2]  See Pub. L. No. 101-194, § 503, 103 Stat. 1716,
1755 (1989) (Ethics Reform Act); 31 U.S.C. § 1344.  Section 1344
authorizes the use of agency automobiles for official purposes.[3]

---

     [2] There is no specific statute addressing travel by Cabinet
spouses, as there is for Presidential and Vice-Presidential
spouses.  See 3 U.S.C. §§ 105(e), 106(c).

     [3] Section 1344 provides:

     (a)(1) Funds available to a Federal agency, by
     appropriation or otherwise, may be expended by the
     Federal agency for the maintenance, operation, or
     repair of any passenger carrier only to the extent that
     such carrier is used to provide transportation for
     official purposes.  Notwithstanding any other provision
     of law, transporting any individual other than the
     individuals listed in subsections (b) and (c) of this
     section between such individual's residence and such
     individual's place of employment is not transportation
     for an official purpose.

                    *     *     *

     (b) A passenger carrier may be used to transport
     between residence and place of employment the following
     officers and employees of Federal agencies.

                    *     *     *

     (2)(A) officers compensated at Level I of the
     Executive Schedule pursuant to section 5312 of title 5
                                   (continued...)

Section 503 of the Ethics Reform Act authorizes agencies to issue rules governing "incidental use" of automobiles for <u>unofficial</u> purposes.[4]

As discussed below, we believe that the spousal travel by automobile that would be authorized by the directive may properly be characterized as "official" within the meaning of 31 U.S.C. § 1344. To the extent any portion of such travel is determined to be "unofficial," or should the White House instead choose to characterize the travel as "unofficial," we believe such travel at government expense would nevertheless be authorized under section 503 as "incidental" unofficial travel. Consequently, we recommend that any implementing regulations provide that the authorized categories of spousal travel may be paid for as "official" travel or, alternatively, as "incidental" unofficial travel.

A. <u>"Official" Travel Under Section 1344</u>

Section 1344 authorizes use of government automobiles for spousal transportation if such use is for "official purposes." <u>Id</u>. at § 1344(a)(1).[5] Whether spousal travel in any particular

---

[3](...continued)
[Cabinet officers].

(Emphasis added.) <u>See</u> <u>also</u> 31 U.S.C. § 1345 (no appropriation may be used to pay for transportation expenses of anyone except a federal officer or employee carrying out official business); 31 U.S.C. § 1349 (mandatory one month suspension without pay for willful misuse of cars).

[4] Section 503 of the Ethics Reform Act provides, in pertinent part:

Notwithstanding any other provision of law, the head of each department, agency, or other entity of each branch of the Government shall prescribe by rule appropriate conditions for the incidental use, for other than official business, of vehicles owned or leased by the Government.

<u>See generally</u> <u>Report of the Bipartisan Task Force on Ethics on H.R. 3660</u>, 101st Cong., 1st Sess. (Comm. Print 1989), at 35-37.

[5] The term "official purposes" is defined to include certain home-to-work transportation. By the terms of the statute, home-to-work transportation by government vehicle is available only to Cabinet members themselves. General Services Administration (GSA) regulations implementing 31 U.S.C. § 1344, however, define

(continued...)

- 3 -

circumstance is for an "official purpose" has proven to be a nettlesome question over the years.[6] GAO has taken a restrictive

---

[5](...continued)
limited conditions under which family members may be beneficiaries of this privilege:

> If an employee is authorized transportation between his/her residence and an official duty site, this privilege does not extend to his/her spouse, other relatives, or friends unless --
>
> > (1) It is consistent with the agency's policy,
> >
> > (2) <u>They are with the employee when he/she is picked up, and</u>
> >
> > (3) <u>They are transported to the same place or event</u>.

53 Fed. Reg. 26773, 26777 (July 15, 1988), <u>to be codified at</u> 41 C.F.R. § 101-6.402(f) (emphasis added). Thus, spouses may use government automobiles that are provided to Cabinet members for home-to-work transportation, but only when they are accompanying their Cabinet spouse to or from the same function. <u>Id</u>. This limited exception is obviously not broad enough to encompass the full range of spousal transportation contemplated by the President. It can and should be relied upon, however, as additional authority for that portion of the agencies' regulations to which it will pertain.

    GSA recently advised that its authority over home-to-work transportation did not include authority over spousal transportation because spouses are not federal employees entitled to such transportation. Letter to Mr. Abraham D. Sofaer, Legal Advisor, Department of State from Richard G. Austin, Acting Administrator, GSA, September 5, 1989. It took the position that the agency must determine whether spousal transportation is for an "official purpose" within the meaning of 31 U.S.C. § 1344(a)(1): "A determination that [transportation of the Secretary of State's wife] is for an 'official purpose' can only be made by the Department of State, based upon whether or not the transportation furthers the mission of the agency." <u>Id</u>.

[6] The question has also attracted considerable press attention. <u>See</u>, <u>e.g.</u>, Wash. Post, September 20, 1985, at A10, col. 1 (review of GAO report covering misuse of automobiles by spouses); Wash. Post, March 28, 1984, at A21, col. 1 (wife of the Secretary of the Treasury, wife of the Attorney General); <u>id</u>. at A22, col. 1 (wife of the Secretary of Defense); Wash. Post,

(continued...)

view of agency authority in this area, concluding that only spouses who are performing a "direct service" to the government may have their travel expenses paid by the government. The GAO justifies the payment of travel expenses in these circumstances under 5 U.S.C. § 5703 which provides that "An employee serving intermittently in the Government Service as an expert or consultant and paid . . . or serving without pay or at $1 a year, may be allowed travel or transportation expenses . . . while away from his home or regular place of business and at the place of employment or service." The "direct services" test -- which is not based on any statutory language -- is not met, according to GAO, merely because the individual's activities may in some way enhance the agency's objectives. Principles of Federal Appropriation Law (GAO 1982), at 3-39. While GAO has occasionally approved limited spousal travel, it has rejected attempts to have the government pay more generally for spousal travel expenses.[7]

In the past OLC has taken a similarly restrictive view of "official purposes" spousal travel. The Office concluded in 1984, for example, that the Department of Justice could not pay for transportation of the Attorney General's spouse to events very similar to those listed in the Draft Guidance Memorandum.[8]

---

[6](...continued) March 27, 1984, at A21, col. 3 (wife of an Undersecretary at HUD); Wash. Post, May 20, 1983, at A15, col. 1 (wife of an Undersecretary at HUD).

[7] Compare GAO Op. B-111642 (1957) (unpublished) (government could pay travel expenses of surviving spouse to attend ceremony where departmental award would be given to deceased employee); GAO Op. B-169917 (1970) (unpublished) (government can pay wife's expenses to accompany employee-husband who became incapacitated while on official travel) with GAO Op. B-210555.9, Letter to Sen. Jake Garn from Milton J. Socolar, Comptroller General, June 28, 1984, at 3 ("the fact that a spouse of a government official may be performing services which would benefit the Government would not, in itself, satisfy the statutory requirement" of an official purpose); GAO Op. B-204877 (Nov. 27, 1981) (unpublished) ("With a few statutorily established exceptions, we are not aware of any authority to pay the travel and per diem expenses of individuals who are not federal employees. This is true even though the presence of spouses might in some way enhance the achieving of the purposes of the trips.").

[8] Memorandum for Michael E. Shaheen, Jr., Counsel, Office of Professional Responsibility from Robert B. Shanks, Deputy Assistant Attorney General, Office of Legal Counsel, January 23, 1984, at 14-15.

In 1986 GAO adopted a modest exception to its strict position on spousal transportation. It concluded that spouses of government employees entitled to routine home-to-work transportation may be transported in government vehicles when the spouse is being transported to or from an official or quasi-official function, the spouse's presence at the function is in the government's interest, and circumstances make it awkward or impossible for the official to accompany the spouse enroute.[9] GAO thus concluded that the presence of a Cabinet spouse at certain activities could be "in the government's interest," thereby authorizing as an "official purpose" spousal transportation to and from those activities. OLC subsequently adopted this view in a 1986 opinion that relied on the GAO Report.[10] Neither GAO nor OLC, however, has generally permitted spousal travel under the authority of section 1344.

The President proposes to determine categorically that certain spousal activities serve the "official purposes" of the Executive branch. As head of the Executive branch, the President ultimately has this authority to determine what falls within the Executive branch's official activities. Thus, he clearly would be in a position to make a categorical determination that certain spousal transportation furthers the mission of the Executive branch as a whole, and therefore the individual Executive departments. The President cannot define the statutory term "official purposes" to include anything he wishes. Presumably, there must be a meaningful nexus between the spouses' participation in the proposed activities and the advancement of agency objectives before the statute would be satisfied. However, the President has significant discretion as the Chief Executive to decide what activities advance the official business of the executive agencies he supervises, and there obviously is a sufficient nexus in this case to satisfy the statute. The activities listed in the Draft Guidance Memorandum will be undertaken either on behalf of or to advance the interests of the United States government or to advance a specific agency's mission. Accordingly, were the President to conclude that the activities listed in the Draft Guidance Memorandum were "official purposes" within the meaning of 31 U.S.C. § 1344(a)(1), we

---

[9] GAO, Use of Government Motor Vehicles for the Transportation of Government Officials and the Relatives of Government Officials, Report to the Chairman, Subcommittee on Legislation and National Security, Committee on Government Operations, House of Representatives, at 50 note a (GAO Report GGD-85-76) (1985).

[10] Memorandum for Harry H. Flickinger, Acting Assistant Attorney General for Administration from Charles J. Cooper, Assistant Attorney General, Office of Legal Counsel, October 23, 1986.

- 6 -

believe that agencies could utilize their cars to transport spouses to and from the activities identified by the President.

## B. "Incidental" Unofficial Travel Under Section 503

Even if section 1344 did not provide authority for the kind of automobile travel proposed by the President, section 503 of the Ethics Reform Act, see note 4 supra, exists as an alternative source of authority. This section accords agency heads broad discretion to authorize incidental, nonofficial use of government vehicles. If section 503 were relied upon, the White House directive would be that agencies and departments shall deem the specified travel to be "incidental" and "unofficial" within the meaning of section 503. We believe that if each Cabinet agency issued regulations pursuant to such a White House directive stating that spousal transportation to and from these activities constitutes "incidental use" of government vehicles "for other than official business," the Cabinet spouses could permissibly travel to and from the activities by government vehicle. Given the breadth of the agency heads' discretion under section 503, this statute provides clear authority for the transportation of Cabinet spouses within metropolitan Washington for the purposes listed in the Draft Guidance Memorandum: transportation from home to receptions and similar functions, speaking appearances on behalf of the federal government, and meetings with the First Lady and other Cabinet spouses. Accordingly, we believe that a presidential directive and the ensuing agency regulations could also be based on section 503, should the President choose to characterize the designated travel as "incidental" and "unofficial."

## II. Aircraft Travel by Spouses

The proposed directive would contemplate spousal travel by aircraft, in addition to travel by government car. The directive would provide that:

> To the extent that travel funds are available, a Cabinet spouse may travel domestically or abroad at Government expense (including travel on a Government plane with an official delegation) if the travel is required for official spousal activities.

The directive would go on to explain that under certain circumstances such spousal aircraft travel may be paid for either by nonprofit organizations[11] or by foreign govern-

---

[11] The directive would provide in this regard that "to the extent that both Office of Personnel Management and agency regulations permit, a Cabinet member may accept travel [expenses] for
(continued...)

ments.[12] Finally, the directive would emphasize that under soon-to-be-issued GSA regulations, all agencies will be permitted to accept gift funds to pay for spousal travel.[13] We believe that the broad authorization of spousal aircraft travel is supportable under existing law, and that the draft directive otherwise reflects the current authorities that could be relied upon for such travel.

    1. <u>The government may pay for air travel that is required for official spousal activities</u>. An agency may pay for spousal travel on government, 31 U.S.C. § 1344,[14] and commercial, 5 U.S.C. § 5703,[15] aircraft as long as the spouse is serving an

---

[11](...continued)
himself or herself and his or her spouse from a non-profit organization recognized under section 501(c)(3) of the Internal Revenue Code in connection with attendance at meetings and conferences, provided there is no conflict of interest."

[12] The directive would provide that "under the Foreign Gifts and Decorations Act, a Cabinet member may accept from a foreign Government expenses for travel <u>wholly inside a foreign country</u> for himself or herself and a spouse, if refusal to accept would embarrass the foreign country and if consistent with U.S. interests."

[13] Under the authority of section 302 of the Ethics Reform Act of 1989, regulations are to be issued by GSA that will give all agencies the authority to accept gift funds to pay for travel of a spouse accompanying a Federal employee (including a Cabinet member), subject to conflict-of-interest standards.

[14] Section 1344 imposes limitations on the use of federal funds for a "passenger carrier." Section 1344(g)(1) defines "passenger carrier" to include aircraft owned or leased by the government.

[15] <u>See</u> page 5 <u>supra</u>. Although we cite 5 U.S.C. § 5703 as general authority, most agencies have broad authority to use their appropriation to pay for all necessary expenses. This includes official travel expenses, such as air fare and hotel accommodations. <u>See, e.g.</u>, Pub. L. No. 101-162, 103 Stat. 988, 995 (1979) (Department of Justice appropriation for necessary expenses for Department's administration). Once the President has made his determination that such travel should be deemed official, and the agency has made the case-by-case determination that the proposed travel falls into one of the approved categories of official spousal activity, the agency can use its appropriation to pay for the travel, just as it now uses the appropriation to pay for its employees' official travel expenses.

official purpose.[16] The President's determination that the specified spousal activities are official activities of the federal government would clearly establish the necessary predicate for reliance upon these statutes.

There are many instances, especially in the context of foreign travel, where it may not even be necessary for the agency to pay for spousal travel. For example, a department often pays the Department of Defense a lump sum for use of a military aircraft. In those instances, spouses have traditionally, and permissibly, traveled on a space-available basis.[17] If this method of travel is otherwise available, agencies may wish simply to continue that method of accounting for spousal travel.[18]

2. __An employee's spouse may accept travel expenses from a charitable organization__. Employees may, consistent with any other applicable conflicts rules, accept reimbursement for travel expenses for official travel from any organization that is tax-

---

[16] See, e.g., Memorandum for the Attorney General from Charles J. Cooper, Assistant Attorney General, Office of Legal Counsel, March 12, 1988, at 2-3 ("Spousal expenses on foreign trips may also in certain circumstances be borne by the U.S. Government, if a spouse's presence on a foreign trip can be said to serve an official purpose."); Memorandum for the Attorney General from Ralph W. Tarr, Deputy Assistant Attorney General, Office of Legal Counsel, October 16, 1982, at 2 (where spouse's travel "serves the diplomatic interests of the United States"); Memorandum for the Attorney General from John M. Harmon, Assistant Attorney General, Office of Legal Counsel, December 19, 1980, at 1-2; Memorandum for the Attorney General from John M. Harmon, Assistant Attorney General, Office of Legal Counsel, September 21, 1979, at 3 (where "the Government would be benefited"); 2 Op. Off. Legal Counsel 327 (1978) (government can pay travel expenses of a relative of the President who is traveling on official business on behalf of the President).

[17] GAO Op. B-204877 (Nov. 27, 1981) (unpublished) (transportation of congressional spouses); Memorandum for the Attorney General from Ralph W. Tarr, Deputy Assistant Attorney General, Office of Legal Counsel, Oct. 18, 1982 (Attorney General's wife may travel on foreign visit on space-available basis).

[18] The disadvantage of this method is that the Cabinet member must reimburse the agency for any additional expenses, such as in-flight meals, that may be personal to the spouse. Nevertheless, there may be Cabinet spouses who would prefer that they not be treated as an official member of the party. For example, a spouse who worked at a law firm that did business with the agency might prefer to pay his or her personal costs in order to avoid even the appearance of impropriety.

exempt under section 501(c)(3) of the Internal Revenue Code. 5 U.S.C § 4111(a).[19] The Department of Justice has long taken the position that an employee's acceptance of reimbursement for a spouse's travel expenses is also permissible.[20] In the interim until GSA promulgates its regulations, see discussion infra, and even after the regulations issue, this will remain as authority for acceptance of spousal travel expenses.

3. A Cabinet member may permit a foreign government to pay for a spouse's travel expenses. The Foreign Gift Act permits the acceptance of travel expenses from a foreign government for a

---

[19] This section provides:

(a) To the extent authorized by regulation of the President, contributions and awards incident to training in non-Government facilities, and payment of travel, subsistence, and other expenses incident to attendance at meetings, may be made to and accepted by an employee, without regard to section 209 of title 18, if the contributions, awards, and payments are made by [a § 501(c)(3)] organization[.]

See, e.g., 28 C.F.R. § 45.735.14a(a). Thus, section 4111 permits acceptance of these payments without regard to 18 U.S.C. § 209, and there is no statutory bar to an employee's spouse accepting them as well.

[20] See generally Memorandum for the Attorney General from Charles J. Cooper, Assistant Attorney General, Office of Legal Counsel, March 2, 1988, at 2; Letter to David Martin, Esquire, Director, Office of Government Ethics from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, April 11, 1984; Letter to David Scott, Esquire, Office of Government Ethics from Ms. Beth Nolan and Ms. Janis Sposato, Attorney-Advisers, Office of Legal Counsel, July 8, 1983; Memorandum for Carolyn B. Kuhl, Special Assistant to the Attorney General from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, September 16, 1982, at 2-3; Memorandum for the Attorney General from John M. Harmon, Assistant Attorney General, Office of Legal Counsel, December 19, 1980, at 3 n.5; Memorandum for Terrence B. Adamson, Special Assistant to the Attorney General from John M. Harmon, Assistant Attorney General, Office of Legal Counsel, June 19, 1978, at 3 n.2. See also 28 C.F.R. § 45.735-14a(d) (spousal travel expenses may, with the permission of the Deputy Designated Agency Ethics Official, be accepted from most non-profit organizations).

federal employee and a spouse. 5 U.S.C. § 7342(c)(1)(B)(ii).[21] As the proposed Memorandum notes, the statute only covers travel that is "entirely outside" the United States. The flight to and from the foreign country is not covered.[22]

4. **Agencies may accept the cost of spousal travel expenses from sources outside the government.** Section 302 of the Ethics Reform Act of 1989, to be codified at 31 U.S.C. § 1352, directs the Administrator of GSA in consultation with the Office of Government Ethics (OGE), to issue regulations prescribing

> the conditions under which an agency or employee in the executive branch may accept payment from non-Federal sources for travel, subsistence, and related expenses with respect to attendance of the employee (or the spouse of such employee) at any meeting or similar function relating to the official duties of the employee.

Id. (emphasis added). Once these regulations are issued, agencies and employees will be able to accept travel expenses for all spouses, including Cabinet spouses, under the conditions set forth in the regulations. Even agencies, such as the Department of Justice, that do not have gift acceptance authority, will be able to accept funds for spousal travel. Under these regulations, agencies and employees should have much greater flexibility in permitting non-government sources to pay for spouses accompanying government officials.[23]

---

[21] The Foreign Gift Act defines employee to include spouse. 5 U.S.C. § 7342(a)(1)(G). Employees may accept gifts of more than minimal value where refusal would cause offense or embarrassment. 5 U.S.C. § 7342(c)(1)(B). Employees are specifically authorized to

> accept gifts of travel or expenses for travel taking place entirely outside the United States . . . if such acceptance is appropriate, consistent with the interests of the United States, and permitted by the employing agency and [its regulations].

5 U.S.C. § 7342(c)(1)(B)(ii).

[22] See, e.g., Memorandum for the Attorney General from Charles J. Cooper, Assistant Attorney General, Office of Legal Counsel, March 2, 1988.

[23] The Draft Guidance Memorandum includes a statement that

> if a trip has multiple purposes, a reasonable alloca-
> (continued...)

- 11 -

## CONCLUSION

We believe, based upon the foregoing authorities, that the President can ensure that Cabinet spouses may use government vehicles, or otherwise travel at government expense, to and from the activities that he would identify, through issuance of the contemplated directive and promulgation of conforming regulations by the respective agencies and departments.

We would be glad to assist in implementing this proposal. Please let me know if we can be of further assistance.[24]

*(signature: W P Barr)*

William P. Barr
Assistant Attorney General
Office of Legal Counsel

---

[23] (...continued) tion of costs should be made between official activities and others, just as costs of travel by Presidential appointees are now allocated between official, personal, and political travel.

We would recommend that this language be redrafted to eliminate any suggestion that Cabinet members may use government transportation for personal activities. The following language might be used instead:

> if, during an official trip, an agency official also undertakes personal or political activities, a reasonable allocation . . . .

[24] To the extent travel is for official purposes, we do not believe that the value of transportation would be treated as taxable income. However, this should be confirmed with the Department of the Treasury which is responsible for administering the tax laws.

The Memorandum should also note that certain items, such as reimbursement of a spouse's travel by a private organization, may have to be reported on the Cabinet member's financial disclosure report. 5 U.S.C. app. § 202(e)(1)(C), (D).

- 12 -